In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00027-CR
______________________________


DARNANN BAYNE DAVIS, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 402nd Judicial District Court
Wood County, Texas
Trial Court No. 15,396-97


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Chief Justice Morriss


MEMORANDUM OPINION

            On April 27, 1998, Darnann Bayne Davis pled guilty to two separate charges of injuring a
child. Pursuant to a negotiated plea agreement, the trial court deferred a finding of guilt in each case
and placed Davis on community supervision for a period of six years. 
            On July 24, 2002, the State filed its first amended motion to proceed to an adjudication of
guilt. The trial court conducted a hearing on the State's motion and, on January 14, 2003, decided
Davis had violated the terms of his community supervision, adjudicated Davis' guilt, and sentenced
him to three years' imprisonment. Both convictions were appealed separately, but the briefs in each
case are substantively identical.
            Since the briefs and arguments raised therein are identical in each appeal, for the reasons
stated in Davis v. State, No. 06-03-00026-CR, we likewise dismiss Davis' appeal for want of
jurisdiction.

                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice
 
Date Submitted:          May 12, 2004
Date Decided:             May 28, 2004

Do Not Publish




ck cocaine on the ground next to the passenger side of the
vehicle. Rogers subsequently arrested Williams, who denied possessing any cocaine or having any
knowledge of the cocaine. A search of the vehicle revealed a canister with cocaine residue in it; this
canister had been within arm's reach of Williams's seat inside the car. 

 After Williams had been taken into custody, he was apparently directed to sit on the front of
Rogers's patrol vehicle while she conducted a more thorough search of the interior of the other
vehicle. The video camera in the patrol car continued to record the remainder of the traffic stop. 
While Williams sat on the patrol car and while Rogers was distracted with searching the other car,
Williams appears on the police videotape to pull something out of his shoe and then throw it while
Rogers conducted her search. Rogers did not herself see Williams throw this object at this point in
time; the officer learned of Williams's furtive conduct when she reviewed her videotape later the next
morning. When Rogers returned to the scene of Williams's arrest, she was unable to find anything
such as drugs at the location where Williams had been arrested. 

 Melissa Brooke Harrison, a forensic scientist with the Texas Department of Public Safety's
Crime Laboratory in Tyler, testified that she examined the suspected drugs seized by the Rusk
County Sheriff's Office in connection with this case. According to Harrison's scientific testing, the
eight off-white rocks submitted in connection with the case by the sheriff's office contained cocaine;
the total weight of the narcotics came to 1.37 grams. 

 Next, Williams took the witness stand in his own defense. He told the jury that neither he
nor his companion that evening, Gary Roquemore, had been using drugs on the night in question. 
Williams denied possessing or disposing of any drugs that night. Instead, Williams told the jury that
what they had seen him drop on the side of the road was a white cigarette lighter. Williams also
claimed that his apparent nervousness on that evening (shaking hands and profuse sweating) was the
result of having a high white blood cell count in his body. He thereafter repeatedly denied throwing
anything out of the car's window. Williams's only explanation for how police found cocaine at the
scene of the traffic stop was that such was a freakish coincidence. 

 The thrust of Williams's argument on appeal is that the evidence fails to show sufficient links
between himself and the cocaine later found by the police. We disagree. Rogers testified that, not
long after the initial traffic stop, she saw the passenger (whom she identified as Williams) reach his
hand out of the passenger-side window and drop something. Rogers later observed the dropped
object and thought it looked like rocks of crack cocaine. When this dropped object was submitted
to the crime laboratory, it turned out to contain eight rocks of cocaine. Given Williams's nervous
appearance (shaking and sweating), his proximity to the drugs both when and where they were
initially discarded, the presence of other contraband containing cocaine residue inside the car (which
was found within an area that Williams could have reached), and Williams's post-arrest furtive
movements (from which the jury was free to infer that Williams possessed additional contraband and
knew of its illegality), we conclude there were sufficient links between Williams and the cocaine
from which the jury could have reasonably concluded that Williams knowingly possessed the crack
cocaine in question. The evidence is, therefore, factually and legally sufficient to support the jury's
verdict that Williams "possessed" the cocaine in question.

Conclusion

 Having found no merit in Williams's appellate issues, we affirm the trial court's judgment.



 Bailey C. Moseley

 Justice


Date Submitted: April 7, 2008

Date Decided: April 24, 2008


Do Not Publish
1. These links include the following factors:


(1) the contraband was in plain view or recovered from an enclosed place; (2) the
accused was the owner of the premises or the place where the contraband was found;
(3) the accused was found with a large amount of cash; (4) the contraband was
conveniently accessible to the accused; (5) the contraband was found in close
proximity to the accused; (6) a strong residual odor of the contraband was present;
(7) the accused possessed other contraband when arrested; (8) paraphernalia to use
the contraband was in view, or found on the accused; (9) the physical condition of
the accused indicated recent consumption of the contraband in question; (10) conduct
by the accused indicated a consciousness of guilt; (11) the accused attempted to flee;
(12) the accused made furtive gestures; (13) the accused had a special connection to
the contraband; (14) the occupants of the premises gave conflicting statements about
relevant matters; (15) the accused made incriminating statements connecting himself
or herself to the contraband; (16) the quantity of the contraband; and (17) the accused
was observed in a suspicious area under suspicious circumstances. 


Washington, 215 S.W.3d at 554.